IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 14-00021-01-CR-W-BP |
| | ) | |
| JAMES P. ROBERTS, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

This matter is currently before the Court on Defendant James P. Roberts' Motion to Suppress Evidence Seized in Violation of His Constitutional Rights and Motion to Suppress His Statements Made in the Residence (doc #29). For the reasons set forth below, it is recommended that this motion be denied.

I. INTRODUCTION

On January 3, 2014, a Criminal Complaint was filed against James P. Roberts. On January 28, 2014, the Grand Jury returned a one count indictment against defendant Roberts. The indictment charges that on January 2, 2014, defendant Roberts, having been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed a firearm.

On October 28, 2014, an evidentiary hearing was held on defendant's motion to suppress. Defendant Roberts was represented by appointed counsel Jeremy S. Weis. The Government was represented by Assistant United States Attorney Bruce E. Clark. The Government called Detective Vernon Huth and Sergeant Eric Greenwell of the Kansas City, Missouri Police

Department and Special Agent Harold Lett of the Bureau of Alcohol, Tobacco, Firearms and Explosives as witnesses. The defense called Julie Eilers, an investigator with the Federal Public Defender's Office, to testify.

## II. FINDINGS OF FACT

On the basis of the evidence adduced at the evidentiary hearing, the undersigned submits the following proposed findings of fact:

1. On January 2, 2014, Detective Vernon Huth was involved in the search for a suspect in a homicide that had occurred the day before. (Tr. at 3) The victim had been killed by a handgun. (Tr. at 3, 32) The name associated with the suspect was James. (Tr. at 3-4, 32-33) Detective Huth had been given the name of the suspect during a briefing conducted by Sergeant Eric Greenwell. (Tr. at 4) At the briefing, the officers were also told that James was a black male. (Tr. at 18, 44) Homicide detectives had obtained a court order for the GPS location of a telephone based on the use of the telephone number for James. (Tr. at 4) Detective Huth was provided with a location of an apartment at 2102 Wheeling for James that had been developed as a result of pings from the telephone associated with James. (Tr. at 4-5)

2. Detective Huth, along with several other officers set up a surveillance of 2102 Wheeling. (Tr. at 5, 33) Detective Huth saw a black male leave the residence. (Tr. at 5) Detective Huth, Detective Craig Horalek and Sergeant Greenwell approached the man who was bent over and digging around in a vehicle. (Tr. at 5, 34) The officers were wearing vests and badges that clearly identified them as police. (Tr. at 5, 16) Detective Huth and Sergeant Greenwell both testified that they smelled marijuana on the man. (Tr. at 5, 34-35) When asked for his name, the man was very hesitant to answer and he was sweating. (Tr. at 5-6) Detective Huth testified that he found it odd that the man was sweating because it was approximately 7 degrees outside and the man was not dressed warmly. (Tr. at 5-6)

3. Detective Huth believed the man to be under the influence of marijuana. (Tr. at 6) Based on his training and experience, Detective Huth knew that people under the influence of narcotics can do things that they normally would not do. (Tr. at 6) Therefore, Detective Huth handcuffed the man for officer safety. (Tr. at 6, 35) The man told the officers his name (Gerrod Woods) and stated that he was visiting his friend James and playing video games. (Tr. at 6, 34)

4. The officers decided to make contact with James, so they went towards the door of the apartment. (Tr. at 6) As the officers (Detective Huth, Detective Horalek and Sergeant Greenwell) were approaching the door with Mr. Woods, Woods told them, "Go on in. I'm being straight with you, it's just me and James." (Tr. at 6,

20) Sergeant Greenwell knocked hard on the door and announced, "Police officers." (Tr. at 6, 35) Both Detective Huth and Sergeant Greenwell testified that the door came open when Sergeant Greenwell knocked on it. (Tr. at 6-8, 21, 35, 48) When the door came open, Detective Huth testified that he observed a black male sitting on the corner of a couch, illuminated by the light from the TV.[1] (Tr. at 6) Detective Huth and Sergeant Greenwell both testified that they smelled a strong odor of marijuana coming from inside the residence. (Tr. at 6, 36) Detective Huth also testified that he could see what appeared to be a small amount of marijuana and burnt ashes in a smoldering ashtray sitting right beside the man on the couch. (Tr. at 6-7) For officer safety, the officers immediately decided to enter the residence when the door opened and they saw the black male on the couch, rather than stand in the doorway, where they were easy targets. (Tr. at 10, 26) Sergeant Greenwell testified that the officers were concerned that this individual was the suspect of the homicide. (Tr. at 38) Detective Huth testified that he had his gun drawn when he entered the residence. (Tr. at 30) Sergeant Greenwell testified that he had not yet drawn his gun. (Tr. at 37)

5. Sergeant Greenwell continued announcing, "Police officers, police officers, police officers." (Tr. at 8) The officers then said to the individual seated on the couch, "Show us your hands." (Tr. at 8, 37) The individual, defendant James Roberts, at first raised his hands really slow in front of him and just looked at the officers with a blank stare on his face and then he started to put his hands back down. (Tr. at 8, 37) Sergeant Greenwell testified that the officers were concerned that Roberts was reaching for something. (Tr. at 37-38) Detective Huth testified that he believed Roberts to be under the influence of something. (Tr. at 9) Detective Huth further testified that in his experience as a police officer, he has found that people under the influence are unpredictable. (Tr. at 9) The officers were concerned for their safety. (Tr. at 38) The officers approached defendant Roberts. (Tr. at 9, 37) Detective Huth testified that as he went to place one handcuff on Roberts' right arm, Roberts reached down near the edge of the couch. (Tr. at 9) Detective Huth and Sergeant Greenwell then saw a handgun where Roberts was reaching. (Tr. at 9, 38) Detective Huth spun Roberts to the ground and handcuffed him. (Tr. at 9) Other officers came in to clear the residence for any other persons. (Tr. at 9)

6. Defendant Roberts gave Detective Huth the name and phone number of Aleah, who he said was the lessee of the apartment. (Tr. at 11, 39) Detective Huth called the phone number and a girl answered and identified herself as Aleah. (Tr. at 11) Aleah responded to the apartment and was interviewed by Detective Sola. (Tr. at 12, 39)

7. The amount of marijuana present in the apartment was consistent with a misdemeanor offense. (Tr. at 28)

---

[1] Detective Huth testified that it was dark outside as it was approximately 7:00 p.m. (Tr. at 5, 7)

3

8. Sergeant Greenwell testified that defendant Roberts told the officers at the apartment that he did not want them to take the gun because he had just gotten out of prison. (Tr. at 52, 54) Defendant Roberts told the officers "if you want to throw a pillow on that gun, you can – that's fine with me." (Tr. at 52)

9. Special Agent Harold Lett testified that at the time of this incident, defendant Roberts had just recently gotten out of prison[2] and was on parole. (Tr. at 56) The address that defendant Roberts had provided to his parole officer as his residence was 3006 Quincy Avenue. (Tr. at 56) Defendant's parole officer knew nothing about the address of 2102 Wheeling. (Tr. at 56)

10. Assistant Federal Public Defender Bill Raymond[3] and investigator Julie Eilers performed demonstrations on the door to 2102 Wheeling on January 16, 2014. (Tr. at 60, 62, 64; Defendant's Exhibits 12 and 13) The demonstrations were performed at approximately 2:00 in the afternoon. (Tr. at 64) It was a sunny day with the temperature in the 40s. (Tr. at 64) There was no ice or snow present in the door. (Tr. at 64) Ms. Eilers testified that she and Mr. Raymond were not able to get the door to stay closed without latching it. (Tr. at 61-62) When the door was latched, neither Ms. Eilers nor Mr. Raymond could get the door to open on its own by merely pounding on the door. (Tr. at 63)

### III. DISCUSSION

Defendant Roberts seeks to suppress "evidence seized by the government in violation of Mr. Roberts' Constitutional rights as well as to suppress statements made by Mr. Roberts in his home immediately following the illegal search and seizure." (Doc #29 at 1) The specific evidence for which defendant seeks suppression is the following:

- A black Taurus .40 caliber pistol, Model PT27/7 Pro CDS;
- A bag containing a "green leafy substance;"
- Winchester .40 Caliber live round from chamber of firearm;
- Black magazine with 15 round capacity from firearm; and

---

[2] Based on the cross-examination of Special Agent Lett, it appears that defendant Roberts was released from prison in May of 2013. (Tr. at 57)

[3] Defendant was initially represented by Mr. Raymond.

4

- Four .40 Caliber rounds obtained from magazine.[4]

(Id.) Defendant argues that the officers had no warrant to enter the residence. (Id. at 4) Defendant further argues that the smell of marijuana emanating from the residence along with the presence of burnt ashes and a green leafy substance near defendant does not provide sufficient exigent circumstances to overcome the warrant requirement as the marijuana seized was only a misdemeanor quantity. (Id. at 5-6) According to defendant, by the time the officers entered the residence, the witness to the homicide had recanted the name James. (Id. at 5) Finally, defendant argues that his statement should be suppressed as fruit of the poisonous tree. (Id. at 7)

The government responds that the officers' safety provided the exigent circumstance which justified the warrantless entry into the residence. (Doc #33 at 3) "This is a case … where the officers inadvertently came face to face with a suspect in a homicide and took actions to insure their own safety." (Id. at 4)

The Fourth Amendment protects the home from warrantless searches and seizures. See United States v. Dunn, 480 U.S. 294, 300 (1987). However, an exception to this protection occurs when police officers are presented with exigent circumstances. See Payton v. New York, 445 U.S. 573, 590 (1980); United States v. Antwine, 873 F.2d 1144, 1146 (8th Cir. 1989). "Exigent circumstances exist where law enforcement officials have a 'legitimate concern for the safety of themselves or others.'" United States v. Kuenstler, 325 F.3d 1015, 1021 (8th Cir. 2003)(quoting United States v. Vance, 53 F.3d 220, 222 (8th Cir. 1995). The government bears the burden of proving exigent circumstances. United States v. Walsh, 299 F.3d 729, 733-34 (8th Cir.), cert. denied, 537 U.S. 1066 (2002).

The facts presented before this Court show that on January 2, 2014, officers were

---

[4] The magazine and .40 caliber rounds were found within the seized pistol. (Tr. at 65)

involved in the search for a suspect in a homicide. (See Fact No. 1, supra) The victim had been killed by a handgun. (Id.) The name associated with the suspect was James.[5] (Id.) The officers were advised that James was a black male. (Id.) The officers were provided with a location of an apartment at 2102 Wheeling for James that had been developed as a result of pings from the telephone associated with James. (Id.) While conducting surveillance of 2102 Wheeling, officers observed a black male exit the apartment. (See Fact No. 2, supra) The officers contacted the man and believed him to be under the influence of marijuana. (See Fact Nos. 2 and 3, supra) The man stated that he was visiting his friend James. (See Fact No. 3, supra) The officers decided to make contact with James so they went to the door of the apartment, knocked hard on the door and announced, "Police officers." (See Fact No. 4, supra) The door came open when Sergeant Greenwell knocked on it.[6] (Id.) When the door came open, the officers smelled a strong odor of marijuana and saw a black male seated on a couch next to a small amount of marijuana and a smoldering ashtray. (Id.) The officers were concerned that this individual was the suspect of the homicide and they did not want to be standing in a doorway, where they were easy targets. (Id.) The individual appeared to be

---

[5]While defendant's motion contends that by the time the officers entered the residence, the witness to the homicide had recanted the name James and identified an Anthony Phillips (see doc #29 at 5), Detective Huth and Sergeant Greenwell both testified that they were looking for a suspect by the name of James. (See Fact No. 1, supra) Sergeant Greenwell specifically testified that he was not aware at the time he went to 2102 Wheeling that the witness had recanted the name James (Tr. at 42) nor was he aware of the name Anthony Phillips at that time (Tr. at 44).

[6]The Court acknowledges the demonstration by defendant's prior counsel where the door to 2102 Wheeling did not stay closed when it was not latched and did not open on its own by pounding on it if it were latched. (See Fact No. 10, supra) This demonstration was performed under conditions that were not the same as the evening in question. The demonstration was performed at approximately 2:00 in the afternoon on a sunny day with the temperature in the 40s. (Id.) The event in question took place at 7:00 in the evening with the temperature being approximately 7 degrees. (See Fact Nos. 2 and 4 n.1) The officers present clearly testified that the door opened when Sergeant Greenwell knocked on it. (See Fact No. 4, supra) The demonstration does not cause the Court to discredit the officers' testimony.

under the influence of something and while he initially raised his hands, he had started to put his hands back down despite the officers' commands to "Show us your hands." (See Fact No. 5, supra) The officers were concerned for their safety. (Id.) Detective Huth was attempting to handcuff the individual[7] when he reached for a handgun near the edge of the couch. (Id.) The Court finds that exigent circumstances provided the officers with justification to enter the residence without a warrant because they had a legitimate concern for the safety of themselves when the door opened and they were presented with an individual whom they believed to be a suspect in a homicide, who appeared to be under the influence of narcotics and who was not complying with their commands. There was no constitutional violation in the officers' entry into the residence.

It is settled law that an officer may seize an object in plain view without a warrant provided the officer is lawfully in the position from which he views the object, the object's incriminating character is immediately apparent and the officer has a lawful right to access the object. See United States v. Khabeer, 410 F.3d 477, 482 (8th Cir. 2005). See also Payton v. New York, 445 U.S. 573, 587 (1980)("The seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity.") The marijuana was in plain view when the door inadvertently opened. The officers were lawfully in the position from which they viewed the marijuana and its incriminating character was immediately apparent to the officers. As

---

[7]Detective Huth testified that based on his training and experience, people under the influence of narcotics can do things that they normally would not do. (See Fact No. 3, supra) Therefore, when the officers encountered the man found outside of 2102 Wheeling, they handcuffed him for officer safety because they believed the man to be under the influence of marijuana. (Id.) Likewise, the officers believed the man found inside the residence because to be under the influence of narcotics and, therefore, unpredictable. (See Fact No. 5, supra)

7

Detective Huth was attempting to handcuff defendant Roberts for officer safety, Detective Huth and Sergeant Greenwell each observed the handgun in plain view. The Court finds that the officers were justified in seizing both the marijuana and the handgun.

Defendant argues that the statement he made about the gun must be suppressed as fruit of the poisonous tree. However, as there was no constitutional violation in the officers' entry of the residence, the seizure of defendant or the discovery of the gun, defendant's argument that his statement must be suppressed as fruit of the poisonous tree must be denied.

## IV. CONCLUSION

Given the foregoing, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying Defendant James P. Roberts' Motion to Suppress Evidence Seized in Violation of His Constitutional Rights and Motion to Suppress His Statements Made in the Residence (doc #29).

Counsel are reminded they have fourteen days after being served a copy of this Report and Recommendation within which to file and serve objections to same. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

/s/ *Sarah W. Hays*
SARAH W. HAYS
UNITED STATES MAGISTRATE JUDGE